UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
:
In re: :
WORLDCOM, INC., et al., : Chapter 11
: Case No. 03-46590
Debtors. :
:
------------------------------------------------------------X
:
VICTOR O. BROWNING, :
:
Appellant, : 05 Civ. 04547 (SHS)
:
- against - :
:
MCI, INC., :
:
Reorganized :
Debtor-Appellee. :
:
------------------------------------------------------------X
OSCAR C. PINKSTON, :
: 05 Civ. 05532 (SHS)
Appellant, : 05 Civ. 05533 (SHS)
:
- against - : OPINION & ORDER
:
MCI, INC., :
:
Reorganized :
Debtor-Appellee. :
:
------------------------------------------------------------X

SIDNEY H. STEIN, U.S. District Judge.

Oscar C. Pinkston and Victor O. Browning appeal from an order of the United States Bankruptcy Court for the Southern District of New York granting a motion by appellee MCI, Inc. to bar the prosecution of certain property-related claims initiated by Pinkston and Browning. In a Memorandum Decision dated February 14, 2005,

Bankruptcy Judge Arthur J. Gonzalez ruled that any valid claims possessed by appellants were pre-petition in nature and therefore had been discharged by the confirmation of appellee's plan of reorganization. In re Worldcom, Inc., 320 B.R. 772, 784 (Bankr. S.D.N.Y. 2005). Because neither Pinkston nor Browning have valid claims that arose subsequent to the confirmation of appellee's plan of reorganization, this Court affirms the bankruptcy court's ruling that appellants' claims are discharged.

I. BACKGROUND

Worldcom, Inc. was a leading telecommunications carrier that provided a broad range of services when it and various subsidiaries filed for bankruptcy protection pursuant to chapter 11 of title 11 of the United States Code in July and November of 2002. Id. at 774. The bankruptcy court confirmed Worldcom's plan of reorganization by order dated October 31, 2003. Id. The reorganized debtor emerged as MCI Worldcom Communications, Inc. ("MCI"), still a dominant telecommunications carrier. Id.

The claims that MCI seeks to bar involve alleged trespasses by the pre-petition debtor, Worldcom. Pinkston and Browning each filed lawsuits outside of this district seeking redress for fiber optic cables installed by Worldcom underneath the surface of their property and the property of others similarly situated. Id. at 774-5. These cables – which transmit light pulses over long distances – were installed along rights of way legally possessed by certain railroad companies. Id. Appellants' suits rested on theories of both trespass and unjust enrichment. Id. at 774.

Browning's suit was filed in Kansas state court and began prior to Worldcom's bankruptcy filing. Browning v. MCI Worldcom Network Services, et al., No. 0104-CV-144 (Kan. Dist. Ct. Leavenworth County). After the defendants removed the case to

2

Kansas federal court, it was transferred to the United States District Court for the Northern District of Oklahoma. Worldcom, 320 B.R. at 774. It was administratively closed by that court upon Worldcom's chapter 11 filing. Id.

Pinkston's suit, on the other hand, was not filed until after the effective date of Worldcom's plan. In April 2004, Pinkston sued MCI in Alabama state court. Pinkston v. ITC Deltacom, et al., No. 2004-CV-646 (Ala. Cir. Ct. Montgomery County). The suit was then removed to the United States District Court for the Middle District of Alabama. Worldcom, 320 B.R. at 774.

MCI then moved in the United States Bankruptcy Court for the Southern District of New York – where Worldcom's bankruptcy petition had been filed – for an order barring the further prosecution of Pinkston's and Browning's claims, arguing that those claims were pre-petition in nature and had therefore been discharged by the confirmation of Worldcom's plan of reorganization. In granting MCI's motion, Judge Gonzalez found under both Kansas and Alabama law that (i) the pulses MCI transmits through fiber optic cables constitute intangible trespasses, which in the absence of substantial damages are not actionable; and (ii) the cables themselves constitute pre-petition permanent trespasses that were discharged upon the confirmation of Worldcom's plan of reorganization. Id. at 782, 783. As noted above, Pinkston and Browning have appealed that determination to this Court.

## II.  STANDARD OF REVIEW

Because the order of the bankruptcy court below is a final one, this Court has jurisdiction on appeal pursuant to 28 U.S.C. § 158(a). The bankruptcy court's findings of fact must be accepted by this Court unless they are clearly erroneous, whereas the

3

bankruptcy court's findings of law are reviewed de novo. Rosefielde v Toledano, 04-CV-8254, 2005 U.S. Dist. LEXIS 3422, at *5 (S.D.N.Y. Mar. 4, 2005); Homemaker Indus. v. Official Comm. of Unsecured Creditors of HKMR, Inc., 03-CV-9303, 2004 U.S. Dist. LEXIS 6682, at *9 (S.D.N.Y. Apr. 20, 2004).

## III. DISCUSSION

Both before the bankruptcy court and on appeal, appellants' claims are framed broadly and encompass both (i) the repeated transmission of intangible pulses through fiber optic cables onto their property; and (ii) the existence and use of the tangible cables themselves. Appellants assert that the use of fiber optic cables to transmit pulses onto their property constitutes a continuing – as distinguished from a permanent – trespass under both Kansas and Alabama law, thereby giving rise to successive and post-petition causes of action not discharged by the confirmation of Worldcom's plan of reorganization. In disposing of these contentions, the bankruptcy court first found that state law governs the validity of plaintiffs' continuing trespass claims and then held that, since those claims failed under state law, appellants were left with permanent trespasses that had been discharged by the confirmation of Worldcom's plan. Worldcom, 320 B.R. at 780-83.

*A. Discharge of Claims*

Before reaching the state law issues, a threshold matter need be addressed: MCI asserts – and appellants dispute – that the bankruptcy court should not have examined state law in the first place because bankruptcy law determines when a claim arises and is thus fully dispositive of appellants' claims.

4

Section 1141(d)(1)(A) of the Bankruptcy Code provides that the confirmation of a debtor's plan of reorganization discharges "any debt that arose before the date of such confirmation." The Bankruptcy Code defines "debt" as a "liability on a claim." 11 U.S.C. § 101(12). A claim is only discharged by a plan of reorganization if the claimant possessed a right to payment prior to the reorganized debtor's petition date. See In re Chateaugay Corp., 53 F.3d 478, 497 (2d Cir. 1995) ("Chateaugay II").

The bankruptcy court found that section 1141(d)(1)(A) required it to look to state law because, while that statute and bankruptcy law more generally govern claim accrual, state law determines the elements of a particular claim and, in this case, "the elements for each alleged trespass by the light signal did not exist until it had been sent." Worldcom, 320 B.R. at 776. In challenging this approach, MCI relies on the United States Court of Appeals for the Second Circuit's decision in In re Chateaugay Corp., 944 F.2d 997 (2d Cir. 1991) ("Chateaugay I"). In Chateaugay I, the EPA had identified fourteen sites at which the former debtor had been deemed potentially responsible for environmental cleanup costs under the Comprehensive Environmental Response, Compensation and Liability Act. Id. at 999. The Second Circuit held that the still-unincurred costs were nonetheless pre-petition claims discharged by the confirmation of the debtor's plan because the "relationship between environmental regulating agencies and those subject to regulation provides sufficient 'contemplation' of contingencies to bring most ultimately maturing payment obligations based on pre-petition conduct within the definition of 'claims.'" Id. at 1005; see also 11 U.S.C. § 101(5) (defining "claim" as involving "a right to payment, whether or not such right is . . . contingent, matured, [or] unmatured").

5

However, appellants' continuing trespass claim is distinguishable from the EPA's contingent claim in Chateaugay I as well as the other cases outside this jurisdiction cited by MCI. In those cases, the underlying conduct giving rise to the discharged claim occurred pre-petition, whereas only ancillary elemental requirements of the claim – such as injury or, in Chateaugay I, remedial costs – arose post-petition, rendering the claims sufficiently "contingent" prior to the petition date to be deemed existent at that time. See, e.g., In re Cox, 53 B.R. 829, 832 (Bankr. M.D. Fla. 1985). In this case, as the bankruptcy court noted, if appellants' theory is correct, a new state law tort exists each time the fiber optic cables are utilized. Unlike Chateaugay I, which involved "ultimately maturing payment obligations based on pre-petition conduct," 944 F.2d at 1005, any obligations here stem from entirely post-petition conduct.[1] Therefore, to the extent that the alleged trespasses are continuing, claims arising from them have not been discharged pursuant to 11 U.S.C. § 1141(d)(1)(A).

### B. Continuing vs. Permanent Trespass

While the precise configuration of appellants' claims insofar as they involve the intangible light pulses and the tangible fiber optic claims is unclear, this Court will examine the pulses and cables separately to ensure that the entirety of appellants' contentions are captured.

### i. The Light Pulses

The bankruptcy court held that, under both Kansas and Alabama law, any valid continuing trespass claims held by appellants could not arise from the intangible light

---

[1] To the extent that appellants' claims arise from the use of the optic cables separate from the continuing transmission of distinct light pulses onto their property, the claims – even if characterized as continuing under state law – are more properly interpreted as relating to pre-petition conduct under federal bankruptcy law. The Court need not examine this question, however, because it finds that the cables in any event do not give rise to continuing trespasses under state law. See infra.

6

pulses alone. Worldcom, 320 B.R. at 782, 783. Though this Court employs slightly different reasoning with regard to Pinkston's claims under Alabama law, it affirms the bankruptcy court's holding as to the light pulses.

Traditionally, intangible agents such as light could not give rise to trespass. See W. Page Keeton et al., Prosser and Keeton on the Law of Torts § 13, at 71 (5th ed. 1984) ("While it is generally assumed and held that a personal entry is unnecessary for a trespass, the defendant's act must result in an invasion of tangible matter."). Some courts have departed from this traditional view and acknowledged intangible trespasses, but largely only where the intruding agent causes substantial damage and interferes with the property owner's right to exclusive possession. See Cook v. Rockwell Int'l Corp., 273 F. Supp. 2d 1175, 1200 (D. Col. 2003); Gill v. LDI, 19 F. Supp. 2d 1188, 1198 (W.D. Wa. 1998); Mock v. Potlatch Corporation, 786 F. Supp. 1545, 1551 (D. Idaho 1992) ("[I]f the intangible invasion causes substantial damage to the plaintiff's property . . . an action for trespass may be brought.").

Kansas appears to adhere to this modified version of the traditional view, as well. In Maddy v. Vulcan Materials Co., 737 F. Supp. 1528 (D. Kan. 1990), the United States District Court for the District of Kansas noted that "[a] plaintiff claiming trespass must prove that the intangible invasion resulted in substantial damages to the plaintiff's land." Id. at 1539. Although in City of Shawnee v. AT&T Corp., 910 F. Supp. 1546 (D. Kan. 1995), the same court found that the transmission of pulses through a fiber optic cable gave rise to a continuing trespass regardless of the intangible nature of the offending item, it did not reference Kansas law in reaching this conclusion. Id. at 1562. In addition, by 1995 – when Shawnee was decided – the Kansas Supreme Court had

implicitly endorsed the logic of Maddy in Gross v. Capital Elec. Line Builders, Inc., 861 P.2d 1326 (Kan. 1993). There, the defendants used the plaintiffs' land for parking while the plaintiffs were out of town. Id. at 1327. The Supreme Court of Kansas held that damages need not be shown to establish a trespass, but then noted that "Maddy is distinguishable from the present case, where the Grosses alleged a tangible rather than an intangible invasion of their property." Id. at 1329. Gross thus found that the tangible nature of the trespass at issue enabled it to proceed absent a showing of damages. As the bankruptcy court found, since Browning did not and could not assert damages flowing from the light pulses alone, he cannot establish a trespass claim stemming from those pulses; any valid trespass claim would have to involve the tangible cables themselves.

The result is the same with respect to Pinkston's claim, although the analysis under Alabama law is somewhat different. Unlike most states, Alabama does not require actual or substantial damages as part of a claim of intangible trespass. In Borland v. Sanders Lead Co., Inc., 369 So. 2d 523 (Ala. 1979), the Alabama Supreme Court held that the tangibility of the intruding agent does not affect the trespass analysis but that substantial damage need be shown where the trespass is indirect, id. at 529, as in the accidental transmission of noxious gases. Although the bankruptcy court read Borland to require damages in cases of intangible, rather than indirect, trespass, Worldcom, 320 B.R. at 782-83, Borland squarely holds that intrusions that interfere with the right to exclusive possession of property are usually trespasses regardless of tangibility. Borland, 369 So. 2d at 529.

However, while damages need not be shown where an intangible trespass is also direct, the nature of the intruding agent itself must be considered. Alabama courts have

8

found that relatively intangible agents such as dust and gas can give rise to trespass, but that less substantive agents such as light and noise cannot. Compare Borland, 369 So. 2d at 529 (sulfoxide gases sufficient to implicate trespass law); Garner v. Walker, 577 So. 2d 1276, 1277-78 (Ala. 1991) (jury could find trespass based on dust storms); with Born v. Exxon Corp., 388 So. 2d 933, 934 (Ala. 1980) (light and odor do not evidence trespass).[2] Moreover, while Borland may have initially cabined indirect trespasses to the requirement that the trespass involve a "substance" or "thing," later Alabama cases clearly apply that requirement to all trespasses. See Thrash v. Credit Acceptance Corp., 821 So. 2d 968, 973 (Ala. 2001); Holland v. Alabaster, 572 So. 2d 431, 433 (Ala. 1990); Born, 388 So. 2d at 934. Borland itself noted that "there is a point where the entry is so lacking in substance that [trespass] law will refuse to recognize it." 369 So. 2d at 529.

Based on these precedents – in particular, Borland's exception for de minimis intrusions into the right of possession, and Born's explicit rejection of light as a basis for trespass – the Court finds that the allegedly intruding agent here is insufficiently substantive to give rise to a trespass under Alabama law. It is simply not plausible that intangible light pulses encased in fiber optic cables buried several feet below the earth's surface in any way interfere with a landowner's possessory rights.[3] Though Pinkston correctly notes that unlike in many states, Alabama does not require damages where a trespass is intangible, Alabama's exception for de minimis substances addresses the same

---

[2] Pinkston suggests, incorrectly, that both Garner and Tyson Foods, Inc. v. Stevens, 783 So.2d 804 (Ala. 2000) establish that intangible odor and noise can give rise to trespass. In Garner, the noise formed the basis of the plaintiff's nuisance claim, whereas the plaintiff's trespass claim concerned solely dust storms. 577 So. 2d at 1277. In Tyson, the decision does not specify whether the noise was relevant to the plaintiff's trespass claim – rather than its nuisance claim alone – given that the case also involved tangible waste flowing onto the plaintiff's property. 783 So. 2d at 806.

[3] This finding of de minimis invasion is limited to the light itself, rather than the tangible fiber optic cables. While a fiber optic cable is obviously a "substance" entering onto Pinkston's land, any claim arising from the cable was discharged by the confirmation of Worldcom's plan of reorganization. See infra.

9

policy concern as would a damage requirement: that the law not acknowledge trifling, virtually inchoate trespasses. See id. As with Browning's claim, then, the validity of Pinkston's trespass claim depends on whether the fiber optic cables themselves, being tangible, give rise to a continuing trespass.

ii. *The Fiber Optic Cables*

Appellants apparently further assert that the existence and use of the fiber optic cables give rise to continuing trespasses under both Kansas and Alabama law. The Court finds that the bankruptcy court correctly ruled to the contrary under both states' laws.

Though Kansas recognizes the tort of continuing trespass, Nida v. American Rock Crusher Co., 855 P.2d 81, 87 (Kan. 1993), its courts have had little occasion to examine its contours. They have, however, clearly distinguished between permanent and continuing nuisances, holding that a nuisance is continuing where the structure giving rise to it is abatable. See generally Miller v. Cudahy, 567 F. Supp. 892 (D. Kan. 1983). In Isnard v. City of Coffeyville, 917 P.2d 882 (Kan. 1996), for example, the Supreme Court of Kansas held that a flooding nuisance was permanent in nature because the sewer from which it arose was not easily abatable. Id. at 888-89. See also Moon v. City of Lawrence, 982 P.2d 388, 398 (Kan. 1999) (permanent structure gives rise to permanent rather than continuing cause of action); Lackey v. The Prairie Oil & Gas Co., 297 P. 679, 680-81 (Kan. 1931) (same).

Shawnee is helpful here. Although the Shawnee court, as noted above, held that intangible pulses gave rise to continuing causes of action, it also held that the fiber optic cables themselves constituted permanent trespasses because they are not easily removable. 910 F. Supp. at 1561. Shawnee, Isnard, and the body of Kansas nuisance law

10

– combined with the absence of Kansas case law suggesting otherwise –lead to the conclusion that the cables themselves constitute permanent trespasses. Moreover, Browning's attempt to construe the trespass as involving the "use" of the cables rather than the cables themselves does not change the analysis: Kansas trespass and nuisance law do not distinguish between an offending object and the use of that object. It is true that the use of the cables enables MCI to transmit other, new matter onto Browning's property on a continuous basis, but the bankruptcy court and this Court have already found that those pulses, being intangible, do not give rise to a trespass absent a showing of damages.

The Court reaches the same conclusion with regard to Pinkston's claim under Alabama law. In Motisi v. Alabama Gas Corp., 485 So. 2d 1157 (Ala. 1986), the Alabama Supreme Court, in considering the trespass implications of a gas line installed through plaintiff's property, held that "[o]nce committed, the trespass is permanent, and an aggrieved landowner must bring his action [within the statute of limitations period]." Id. at 1158. Similarly, an Alabama appellate court held in Devenish v. Phillips, 743 So. 2d 492 (Ala. Civ. App. 1999) that a retaining wall installed on plaintiff's property "produced a permanent injury to the land" such that "[plaintiff's] right was to full redress in a single action for the trespass." Id. at 494. These decisions confirm that in Alabama, as in Kansas, a permanent structure gives rise to a permanent, rather than a continuing, trespass. Little distinguishes the fiber optic cables installed underground here from the gas line in Motisi or the retaining wall in Devenish, and the Court therefore finds that as

in those cases, the trespass here is permanent.[4] Though defendants find some support for their position in Alabama Power Co. v. Gielle, 373 So. 2d 851, 854 (Ala. Civ. App. 1979) and Jackson v. City of Auburn, No. 2031010, 2005 Ala. Civ. LEXIS 347 (Ala. Civ. App. 2005), Motisi is the sole authority from the Supreme Court of Alabama on this state law issue.

Other, non-trespass Alabama tort cases support this conclusion. LaBauve v. Olin Corp., 231 F.R.D. 632 (S.D. Ala. 2005), for example, involved the migration of mercury off-site from a chemical facility. Id. at 637. The federal district judge in LaBauve held that under Alabama law, because the continuous injury resulted from a single period of wrongdoing, the tortious conduct ceased when the wrongdoing ceased despite the ongoing consequences of that wrongdoing. Id. at 655-56. See also Payton v. Monsanto Co., 801 So. 2d 829, 835 & n.2 (Ala. 2001). Similarly, any consequences stemming from the fiber optic cable in this case relate back to its initial, allegedly unlawful installation, such that there can be no difference between the installation of the cable and its current presence and use. Beyond the transmission of intangible pulses onto Pinkston's property, which the Court has already found non-actionable, there is no tort stemming from the continuous use of a trespassing object apart from the initial wrongful trespass itself.

Because under their respective states' laws both appellants can at best establish a permanent trespass that existed prior to Worldcom's petition date, the bankruptcy court correctly determined that any valid trespass claim they possessed was discharged by the confirmation of Worldcom's plan.

---

[4] That the cables can technically be removed does not render them temporary. See City of Shawnee, 910 F. Supp. at 1561 ("AT&T's cable constitutes a permanent trespass. The cable is not a temporary structure. Removal requires earthmoving equipment.").

12

*C. Unjust Enrichment*

Although the bankruptcy court did not analyze appellants' unjust enrichment claims in detail, it did hold that <u>all</u> of appellants' claims stemming from the fiber optic cables were barred. This is not surprising, given appellants' failure to argue their unjust enrichment claim below. That failure also bars them from raising the issue on appeal. See In re Fisher, 2002 U.S. Dist. LEXIS 19642, No. Cv.-01-2717, at *6 n.2 (E.D.N.Y. May 15, 2002) (issue not raised before the bankruptcy court is not preserved for appeal); Key Mech., Inc. v. BDC 56 LLC, 2002 U.S. Dist. LEXIS 5005, No. 01-Civ.-10173, at *10 n.2 (S.D.N.Y. March 28, 2002) (same). Appellants' fleeting mention in the background section of their objections to MCI's motion in the bankruptcy court of the fact that their underlying complaint alleged unjust enrichment is insufficient for preservation purposes. Cf. Farnham v. Windle 918 F.2d 47, 51 (7th Cir. 1990) (though a complaint must survive a motion to dismiss if supported by any legal theory, failure to brief those theories results in waiver).

The Court notes that, in any event, appellants' unjust enrichment claims are without merit. To the extent that the alleged unjust enrichment arises from the fiber optic cables themselves, the claims accrued prior to the petition date and were therefore discharged by the effectiveness of Worldcom's plan of reorganization. To the extent that the claims involve the transmission of light pulses, those pulses – considered apart from the cables – do not involve a benefit conferred upon MCI to the detriment or at the expense of appellants. See Short v. Wise, 718 P.2d 604, 608 (Kan. 1986) Opelika Prod. Credit Ass'n, Inc. v. Lamb, 361 So. 2d 95, 99 (Ala. 1978). As the court has already found, any intrusion stemming from the light pulse is de minimis and does not work a

13

true detriment to appellants. Moreover, the uncompensated transmission of imperceptible underground light pulses through plaintiff's land is hardly the type of inequitable scenario that typically compels recompense.

IV. CONCLUSION

Because neither the light pulses nor the fiber optic cables give rise to continuing trespasses, any claim possessed by appellants was discharged by the confirmation of Worldcom's plan. Accordingly, the bankruptcy court's Order dated April 13, 2005 is affirmed.

Dated: New York, New York
        March 30, 2006

SO ORDERED:

Sidney H. Stein, U.S.D.J.

14